IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 14–cv–0968–KMT

LYLE C. HEIM,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

# ORDER

This case comes before the court on review of the Commissioner's denial of Plaintiff-Claimant Lyle C. Heim's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act ("the Act"). Jurisdiction is proper under 42 U.S.C. § 405(g).

## PROCEEDURAL BACKGROUND

Claimant applied for DIB and SSI in December 2010, alleging that he had been disabled by bipolar disorder, Attention Deficit Hyperactivity Disorder, Post-Traumatic Stress Disorder, medication nausea, and drug and alcohol dependency. (*See* Doc. No. 14, Social Security Administrative Record ["AR"] at 184, 191, 231.) The Commissioner denied both applications. (*Id.* at 102, 107.) Following the denials, Claimant requested and received a hearing by an Administrative Law Judge ("ALJ"). (*Id.* at 38–74, 111.) At the hearing, the ALJ heard testimony from the claimant about his symptoms and limitations, and consulted a vocational

expert about what jobs might be available for a person with the claimant's limitations. (*See id.* at 42–68, 69–73.) After the hearing, the ALJ determined that Claimant was not disabled within the meaning of section 1614(a)(3)(A) of the Act, because Claimant was capable of substantial gainful activity in the national economy despite the limitations imposed by his impairments. (*See id.* at 32.) The Appeals Council subsequently denied Claimant's request for review (*id.* at 3), making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. *See* 20 C.F.R. §§ 404.981, 422.210(a). Claimant timely sought review by the Court.

## STATUTORY AND REGULATORY BACKGROUND

Titles II and XVI of the Act award Social Security benefits to claimants who meet certain eligibility requirements. 42 U.S.C. §§ 423, 1382. To receive either DIB or SSI, a claimant must be disabled. 42 U.S.C. §§ 1382(a), 423(a). The Social Security Commissioner has established a five-step sequential process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who works is not disabled, regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe" impairment significantly limits the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or "equals" in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, then the ALJ must determine whether the claimant can still perform any past work despite his or her limitations.

5. If the claimant no longer retains the ability to perform past work, then the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy despite the claimant's limitations.

*See* 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). After that, the burden shifts to the Commissioner to prove that, despite the claimant's impairments, he or she is still capable of performing substantial gainful work in the national economy. *Id.* If at any point the Commissioner conclusively finds that the claimant is or is not disabled during the five-step review process, the analysis ends. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

## STANDARD OF REVIEW

Review of the Commissioner's disability decision by this court is limited to determining whether the ALJ applied the correct legal standard, whether the decision is supported by substantial evidence, and whether the decision comports with the relevant regulations and caselaw. *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990); *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). An ALJ's failure to apply the correct legal standard constitutes an independent and sufficient basis for the Court to reverse the ALJ's decision. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Likewise, an ALJ's failure to supply the Court with a sufficient basis to determine that the ALJ followed appropriate legal principles is also grounds for reversal. *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quoting *Smith v. Heckler*, 707 F.2d 1284 (11th Cir. 1983)).

Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196. A finding is supported by substantial evidence if it is

supported by "more than a scintilla, but less than a preponderance" of evidence. *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir.1988) (quoting *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir.1987)). Evidence is insubstantial when it is "overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court may not "reweigh the evidence" or "substitute its judgment" for that of the Commissioner." *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987). So long as there is substantial evidence to support the ALJ's decision, the decision must stand, even if the Court would have reached a different result. *See Ellison*, 929 F.2d at 536.

## ANALYSIS

Claimant alleges the ALJ erred in four major ways. First, Claimant argues the ALJ improperly weighed certain medical opinions. (*See* Doc. No. 19 [Opening Br.] at 14–26, filed Aug. 28, 2014.) Second, Claimant argues that the ALJ's failure to properly weigh medical opinions adversely affected the ALJ's step three analysis. (*See id.* at 28–31.) Third, Claimant contends the ALJ's evaluation of Claimant's credibility was legally and factually deficient. (*See id.* at 33–38.) Fourth, Claimant argues the ALJ's Residual Functional Capacity ("RFC") assessment was not supported by substantial evidence, and, as a result, contaminated step five of the disability review process. (*See id.* at 32–41.) The Claimant also requests this court remand the matter for reconsideration in light of new evidence. (*See id.* at 26–28.)

**The Weight Assigned to Medical Source Opinions**

In the ALJ's written decision, the ALJ discussed the opinions of three doctors: Dr. Terry, Dr. Wharry, and Dr. Rollins. (*See* AR at 28–29.) The ALJ also discussed the progress notes of Claimant's long-time treating psychiatrist, Dr. Martens, though the ALJ does not refer to Dr.

4

Martens by name. (*See id.* at 28; 324.) Claimant contends that the ALJ failed to properly weigh the opinions of these four doctors. (*See* Opening Br. at 14–26.) Specifically, Claimant believes that the ALJ's decision to assign greater weight to Dr. Wharry's opinion than to Dr. Rollins's opinion, and the ALJ's failure to assign the opinions in Dr. Martens's progress notes any weight at all, constitutes reversible error. (*See id.*) It is unclear why Claimant faults the ALJ for assigning "significant weight" to Dr. Terry's opinion. The court will therefore disregard that assignment of error.

      The ALJ is entrusted with the difficult task of resolving evidentiary conflicts, weighing medical source opinions, and, ultimately, determining whether claimants are disabled within the meaning of the Act. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971). Generally speaking, a claimant's treating physician's opinion is afforded the most weight of any medical opinion. *See* 20 C.F.R. § 404.1527(c)(2). Examining source opinions are also typically afforded more weight than non-examining sources, and non-examining sources are usually afforded the least weight of all. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). *See also* 20 C.F.R. § 404.1527(c)(1). When deciding how much to weight to assign a medical source's opinion, the ALJ must consider six factors:

    (1) the length of the treatment relationship and the frequency of examination;

    (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;

    (3) the degree to which the physician's opinion is supported by relevant evidence;

    (4) consistency between the opinion and the record as a whole;

    (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and

> (6) other factors brought to the ALJ's attention that tend to support or contradict the opinion.

*See* 20 C.F.R. §§ 404.1527(c), 416.927.  Then, in the ALJ's written decision, the ALJ must clearly state how much weight the ALJ ultimately assigned the opinion and why.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003).  The ALJ must consider these six factors, but need not discuss each of them.  *Id. (*quoting 20 C.F.R. § 404.1527(d)(2)); *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

*Dr. Rollins's and Dr. Wharry's Opinions*

Claimant believes the ALJ's decision to assign greater weight to Dr. Wharry's opinion than to Dr. Rollins's opinion was improper.  (*See* Opening Br. at 21–26.)  There is no dispute that the ALJ afforded an examining source's opinion (Dr. Rollins) less weight than a non-examining source's opinion (Dr. Wharry).  (*See* Doc. No. 22 [Resp. Br.] at 17–18, filed Nov. 13, 2014 [conceding this fact].)  The question is whether the ALJ's reasons were legitimate.

The ALJ reasoned that "Dr. Wharry had access to more of the claimant's medical records, which provided [Dr. Wharry] with a longitudinal understanding of the claimant's condition, whereas Dr. Rollins's opinion is primarily based on an isolated observation of the claimant's condition."  (AR at 29.)  Dr. Wharry did have access to more of Claimant's medical records than did Dr. Rollins (*compare id.* at 77–79 [listing records reviewed] *with id.* at 394 [same]).

The court agrees with the defendant that having access to more medical records is a legitimate reason for the ALJ to assign greater weight to Dr. Wharry's opinion than to Dr. Rollins's opinion, even though Dr. Rollins was an examining source and Dr. Wharry was not.  (*See* Resp. Br. at 17–18.)  The Commissioner's rulings make it clear that "the extent to which an

6

acceptable medical source is familiar with the other information in your case record" is one of those "Other Factors" the ALJ may consider when weighing a medical source opinion. 20 C.F.R. §§ 404.1527(c), 416.927. Having found at least one legitimate reason for the ALJ to have assigned greater weight to a non-examining source than to an examining source, the court need not consider the legitimacy of the ALJ's other reasons to find that the weight the ALJ assigned Dr. Rollins's opinion is based on more than a "scintilla" of evidence. *See Gossett*, 862 F.2d at 804. The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. *Jozefowicz*, 811 F.2d at 1357.

*Dr. Martens's Opinions*

Claimant also argues that the ALJ erred by failing to assign any weight to the opinions expressed in Dr. Martens's progress notes. (*See* Opening Br. at 15–21.)

When a treating physician's opinion is a) well-supported by medically accepted techniques and b) is consistent with other substantial evidence in the record, the ALJ must give that opinion controlling weight. *Watkins*, 350 F.3d at 1300. Even treating source opinions that are not entitled to controlling weight are still entitled to deference. *See id.* at 1300–01. When deciding how much weight to assign a non-controlling treating source's opinion, the ALJ must consider the same six factors that ALJ's consider when weighing any other medical opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927. Then, in the ALJ's written decision, the ALJ must clearly state how much weight the ALJ ultimately assigned the treating source's opinion and why. *See Watkins*, 350 F.3d at 1300–01. The ALJ must "give good reasons" for that weight, but need not discuss each of the six factors. *Id. (*quoting 20 C.F.R. § 404.1527(d)(2)); *Oldham*, 509 F.3d at 1258. If the ALJ rejects a treating source's opinion entirely, then the ALJ must give "specific,

7

legitimate reasons for doing so." *Sissom v. Colvin*, 512 F. App'x 762, 766 (10th Cir. 2013) (quoting *Watkins*, 350 F.3d at 1301).

In his written decision, the ALJ discussed Claimant's "treatment notes from the Jefferson Center for Mental Health," but did not identify the treating psychiatrist there by his or her name, Dr. Martens. (*See* AR at 28.) The ALJ noted that the claimant had a long history of mental health treatment at Jefferson Center for Mental Health, but that the treatment notes describe "no more than moderate mental health symptoms." (*Id.*) The ALJ observed that "the claimant occasionally complained of sadness and depression," but stated that "his mental health assessments were often within normal limits." (*Id.*) The ALJ then reported that the claimant's Global Assessment of Functioning ("GAF") scores at Jefferson Center for Mental Health "frequently ranged from 50 to 59" and "dropped below 50" in a few "instances," but declared that these instances "appear to have been temporary and isolated events." (*Id.*) The ALJ added that in January of 2011, Dr. Martens (without mentioning him by name) noted that the "symptoms had stabilized" and the claimant "had generally made substantial progress." (*Id.*) The ALJ concluded that the treatment notes "suggest that the claimant had no more than moderate limitations and that his condition generally improved with treatment" and that "the nature of the claimant's mental impairments combined with this GAF scores and his subjective complaints suggest that he may experience some limitations in social functioning as well as in concentration, persistence, or pace." (*Id.* at 28–30.) Finally, the ALJ asserted that his assessment of the Jefferson Center for Mental Health was consistent with Dr. Wharry's opinion. (*Id.* at 30.)

The ALJ treated Dr. Marten's progress notes as medical records rather than medical source opinions. (*See id.* at 28–30.) There is no evidence that Dr. Martens was consulted as part of the claimant's disability application, and though his notes do contain opinions about the claimant's level of mental functioning, his treatment notes do not contain any opinions specifically directed to the Commissioner about the claimant's limitations or ability to work. (*See id.* at 28–30, 295–384.) The notes in the record are simply Dr. Martens's progress notes and opinions during the several years that the claimant sought psychiatric treatment. (*See id.* at 295–384.)

There is no dispute that Dr. Martens was Claimant's treating psychiatrist. (*See* Resp. Br. at 16 [calling Dr. Martens "Plaintiff's psychiatrist" and referring to him as a "treatment provider"].) The ALJ did not assign Dr. Martens's progress notes controlling weight, or any other weight for that matter. (*See* AR at 28–30.) The ALJ did not consider the six factors, explain the ultimate weight he assigned Dr. Martens's opinions, or give "good reasons" for that weight. (*See id.* at 28–30.) Defendant suggests, however, that Dr. Martens's progress notes are not medical source opinions that require such evaluation and explanation. (*See* Resp. Br. at 16–17.) If Dr. Martens's progress notes do contain medical source opinions, the ALJ was required to, at a minimum, expressly state the weight he assigned Dr. Martens's opinions and why. *See Richardson v. Astrue*, 858 F. Supp. 2d 1162, 1170 (D. Colo. 2012) (holding that the ALJ's assignment of weight to a treating source's opinion and the ALJ's explanation for that weight must be explicit). The question therefore becomes whether the opinions in Dr. Martens's progress notes are "medical opinions" within the meaning of the Commissioner's regulations.

The Commissioner's regulations define "medical opinions" as "[s]tatements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions"). 20 C.F.R. § 404.1527(a)(2). In SSR 96-2p, the Commissioner affirmed this definition of medical sources, stating that medical opinions "are opinions about the nature and severity of an individual's impairment(s) . . . ." SSR 96-2P, 1996 WL 374188, at *2. Interpreting these regulations, the Tenth Circuit Court of Appeals has held that "medical findings which impact the RFC . . . must be assessed under the controlling weight standard," *Richardson*, 858 F. Supp. 2d at 1170, and, more specifically, that a treating physician's GAF score is a medical opinion, *see Givens v. Astrue*, 251 F. App'x 561, 567 (10th Cir. 2007).

This court concludes that under the Commissioner's rules and regulations, and applicable caselaw, the opinions expressed in Dr. Martens's progress notes are medical opinions that must have been expressly analyzed and weighed by the ALJ. For example, the GAF scores Dr. Martens assigned the claimant are, by definition, subjective opinions about the severity of the claimant's mental impairments. *See Groberg v. Astrue*, 415 F. App'x 65, 72 n.1 (10th Cir. 2011) ("The GAF is a *subjective* determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning.") (emphasis added) (internal citations and quotations omitted). The scores show that Dr. Martens believed the claimant's overall mental functioning was moderately to severely impaired. *Compare id.* at 69 (explaining that a GAF score of 50 or less indicates a serious impairment, and that a GAF score of 51 to 60 indicates moderate limitations) *with* AR at 295–318 (scoring the claimant's GAF as 52, 54, 47, 49, 52, 54,

53, 52, 52, 53, 52, 50, 50, 46, 49, 52, 48, and 48).  Moreover, the ALJ's use of these scores to formulate the claimant's RFC, asserting that they are consistent with Dr. Wharry's opinion and "suggest that the claimant had no more than moderate limitations," indicates that the GAF scores are also medical source opinions under *Richardson*.  *See Richardson*, 858 F. Supp. 2d at 1170.  Finally, the Tenth Circuit's holding in *Givens* that even a single GAF score by a treating physician is a medical opinion only confirms this court's conclusion that Dr. Marten's GAF scores are medical opinions within the Commissioner's regulations.  *See Givens*, 251 F. App'x at 567.

Though the ALJ never seemed to doubt these GAF scores, the ALJ did not expressly point out that they were treating source opinions, overtly decide whether they were entitled to controlling weight, and ultimately explain, using the six factors in 20 C.F.R. §§ 404.1527(c) and 416.927, the weight he assigned those opinions.  (*See* AR at 28–30.)  Without explicit findings explaining the weight the ALJ assigned Dr. Martens's opinions, the court cannot meaningfully review the ALJ's determination; nor can the court presume the ALJ's compliance with the appropriate legal standards.  *See Wade v. Astrue*, 268 F. App'x 704, 706 (10th Cir. 2008).

The court does not reach or address Claimant's remaining arguments.  The issues raised in those arguments may be resolved by reconsideration and rehearing.

Accordingly, it is

**ORDERED** that the Commissioner's decision is **REVERSED** and this case is **REMANDED** to the Commissioner.  It is further

**ORDERED** that Plaintiff is awarded costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated this 10th day of September, 2015.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge